**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

GEORGIANN CRATSLEY, individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

GUTHRIE HEALTHCARE SYSTEM, CORNING HOSPITAL, AND DR. EDMUND SABANEGH,

DOES 1-20

Defendants

**COMPLAINT**
**PROPOSED CLASS ACTION**

INDEX No.: _______________

## INTRODUCTION

1. This is a civil rights wrongful discharge action brought by Plaintiff Georgiann Cratsley in her individual capacity and on behalf of any other class of health care workers (collectively Plaintiff) pursuant to 29 U.S.C. §660 Subsection 11(c)(1) of the Occupational Safety and Health Act of 1970 ("OSH Act") for the discriminatory discharge of Plaintiff for exercising her right to object to taking the Covid-19 vaccine/immunization on religious grounds, which is a fundamental right protected under 29 U.S.C. §669 Subsection 20(a)(5) of the OSH Act for which Plaintiffs seeks monetary damages, job reinstatement, backpay, compensatory, and punitive damages under the OSH Act private right of action contained in 29 U.S.C. §660 Subsection 11(c)(1) & (2) of the OSH Act.

2. Alternatively, Plaintiff brings an action pursuant to 42 U.S.C. §1983 of the 1964 Civil Rights Act for violations of the federal OSHA Act as previously listed, and the First Amendment Free Exercise Clause.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction pursuant to 28 U.S.C. §1331 regarding the federal question of preemption of the Federal OSHA Act of 1970 over the New York State Vaccine Mandate law, as well original jurisdiction pursuant to the OSH Act 29 USC §660 Section 11(c)(2) (which gives United States district courts exclusive jurisdiction over "any such action" to "order all appropriate relief") for wrongful discharge of employees in violation of the OSH Act Section 11(c)(1).
4. Venue is proper under 28 U.S.C. §§ 1391(a)(1) and (2) in that the Western District of New York is a judicial district in which the defendant does business and is the judicial district in which the events giving rise to the claim occurred.

## PARTIES

A. **Plaintiff**

5. Plaintiff, Georgian Cratsley, a female former Technical Assistant in the department of nursing for Gutherie Corning Hospital (hereafter "Guthrie").
6. Ms. Cratsley was responsible for administrative support of physicians and nurses in the clinical setting.
7. Ms. Cratsley worked for Guthrie for 41 years since April 4, 1981.
8. Ms. Cratsley's employment with Guthrie is subject to a collective bargaining agreement through the union 1199 SEIU (CBA).

B. **Defendants**

9. Defendant Guthrie Healthcare System, previously known as Guthrie Medical Center, is a holding company. It is the sole owner of Robert Packer Hospital, Corning Hospital, Troy Hospital, long term care facilities, and a taxable subsidiary, Twin Tier Management Company,

Inc, which sells durable medical equipment under the name Guthrie MedSupplyDepot. GHS is a Pennsylvania not-for-profit corporation registered to do business in New York State.

10. Defendant Corning Hospital is a non-profit corporation of the State of New York, with a principal place of business at 1 Guthrie Drive, Corning, New York.
11. Corning Hospital and Guthrie Healthcare System shall hereinafter be referred to as "Defendant Guthrie".
12. According to the 2021 Form 990 tax return records for Defendant Guthrie, Defendant is engaged in the business of providing healthcare services to the general public provided within a hospital facility setting and is licensed and regulated by the New York State Department of Health.
13. Under information and belief, Defendant Guthrie's hospital operations and management agreements and policies require Defendant Guthrie to comply with federal and state laws applicable to the operation of Defendant Guthrie's hospitals, which includes compliance with the NY State Vaccine Mandate and compliance with the federal OSH Act as a covered employer.
14. Based on Defendant Guthrie's 2021 990 Tax Return, Defendant Guthrie employed approximately 700 persons that served either in the role of physician, or in the roles of other licensed medical professionals, or served in various roles in hospital administration or operations for the purpose of providing the public healthcare services within a hospital setting.
15. Edmund Sabanegh, MD was and is at all relevant times since 2021 the President and CEO of Defendant Guthrie responsible for the overall medical services and administrative, operational management and leadership of Corning Hospital including the implementation, management and funding of the hospital's compliance with federal and state workplace safety laws and regulations (Dr. Sabanegh).

## FACTUAL BACKGROUND

### A. Plaintiffs Factual Allegations

16. Paragraph's 1-15 above are herein incorporated by this reference as if stated in full herein and all references to attached Exhibits 1-19 are also herein incorporated by this reference as if fully stated in the section of this Complaint in its entirety.

17. On March 11, 2020, the World Health Organization declared the infectious airborne Covid-19 virus a Global Pandemic. See Exhibit 1 attached hereto and incorporated herein by this reference.

18. According to the Centers for Disease Control (CDC), the Covid-19 airborne viral hazard can cause serious physical injury and/or death.

19. Also, according to the CDC, the principal mode by which people are infected with the virus is through exposure to respiratory fluids carrying infectious virus, which exposure occurs in three principal ways: (1) inhalation of very fine airborne respiratory droplets and aerosol particles (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes that are in the atmosphere, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled with virus on them. See Exhibit 2, attached hereto and incorporated by reference.

20. On March 2, 2020, Governor Andrew Cuomo issued Executive Order No. 202[1], extended by Executive Order No. 202.28, that temporarily modified PHL § 225 such that the New York State Department of Health Commissioner can promulgate emergency regulations ("Emergency Orders or EO") and to amend the State Sanitary Code.

[1] See Executive Order 202 at https://www.governor.ny.gov/sites/default/files/atoms/files/EO_202.pdf

21. On August 18, 2021, the New York State Department of Health (NYSDOH) Commissioner issued an Executive Order Public Health Law (PHL) §16 requiring Covered Entities[2] to "continuously require covered personnel to be fully vaccinated against Covid-19 with the first dose for current personnel to be received by September 27, 2021." (See PHL §16 attached the Petition as Exhibit 3)

22. PHL §16 (c)(2) lists "religious exemptions" as one of the "Limited exemptions to vaccination" along with medical exemptions. Id.

23. Defendant Guthrie is a "Covered Entity" defined in PHL §16 regulated by the Public Health Laws subject to all NYSDOH Emergency Orders.

24. On August 26, 2021, the NYSDOH Commissioner repealed PHL §16 and issued PHL §2.61 titled "Prevention of COVID-19 Transmission by Covered Entities" to supersede PHL §16 to add more detailed instructions for Covered Entities regarding the vaccine requirements for covered employees. See Exhibit 4 PHL §2.61

25. On November 24, 2021, PHL §2.61 was amended and it included Subsection (d) titled "Exemptions" it no longer lists religious exemptions for covered employees; rather the updated EO expanded the requirements for granting medical exemptions. See Exhibit 5, Page 3

26. However, on page 13 of PHL §2.61 under the "Regulatory Impact Statement" under subsection "Duplication" it states as follows:

**This regulation will not conflict with any state or federal rules**.

27. However, on Page 22 of PHL §2.61 under the "Job Impact Statement" under subsection "Nature of Impact" the New York State Public Health Law gives regulated hospital entities

---

[2] PHL § 16 defines Covered entity as a general hospital or nursing home pursuant to Section 2801of the Public Health Law – see See PHL § 16 at - https://www.gnyha.org/wp-content/uploads/2021/08/Order-for-Summary-Action-in-the-Matter-of-Covered-Entitities-in-the-Prevention-and-Control-of-the-2019-Novel-Coronavirus-DOH.pdf

permission to violate the OSH Act's ban on the discharge of employees for exercising their right to object to employer mandated medical treatments as stated as follows:

> Covered entities **may terminate** personnel who are not fully vaccinated and do not have a valid medical exemption and are unable to otherwise ensure individuals are not engaged in patient/resident care or expose other covered personnel. (Emphasis added)
>
> See Exhibit 5, Page 22

28. While PHL §2.61 does not "mandate" nor "require" Covered Entities to terminate employees who remain unvaccinated in order for Covered Entities to be in compliance with PHL §2.61, the statute gives Covered Entities "permission" to terminate personnel who are not fully vaccinated based on the Covered Entities discretion in violation of the OSH Act ban on wrongful discharge of employees who exercise their OSHA right to object to Medical Treatment as defined further below.

29. On October 28, 2021, the Commissioner issued EO PHL § 405.11 to require hospitals to maintain a supply of PPE, specifically N95 respirator masks. See § 405.11 attached to Petition as Exhibit 6.

30. In 2009, the World Health Organization declared H1N1 a "global pandemic" and the NYSDOH did not enact any law that required all healthcare workers in the state to receive any H1N1 vaccine in order to work in a hospital building location or setting.

31. In the 41 years Ms. Cratsley was employed by Defendant Guthrie and since the 2009 H1N1 global pandemic was declared, Ms. Cratsley had never been mandated to submit to any vaccine or immunization or be subject to employment termination or placed on indeterminate leave without pay and banned from entering her workplace.

32. On or around August 18, 2021, Defendant Guthrie notified Ms. Cratsley that she was required to submit to and receive a Covid-19 vaccine as an employee of Defendant Guthrie ("Guthrie Vaccine Mandate') as part of Defendant Guthrie's compliance with New York State

Department of Health Covid-19 related emergency orders enacted as Public Health Law §16 and §PHL 2.61 ("NY State Vaccine Mandate"). See Exhibit 7

33. On September 18, 2021, Defendant Guthrie's President and CEO Dr. Sabanegh announced Defendant Guthrie's workplace safety policy related to the Covid-19 Pandemic :

> ""Vaccination is the best way to slow the spread of COVID-19 and prevent serious illness, hospitalization, and death. By putting this requirement in place, we took an important step to ensure patient safety and protect our colleagues on the front lines of care." See Exhibit 8 – News Release attached and incorporated herein by this reference

34. At all times prior to September 18, 2021, Defendant Guthrie had an employment practice of exempting employees who object to any offered vaccination on religious grounds from any Guthrie requirement that employees were to be vaccinated for work place safety and public health purposes.

35. Sometime after the September 18, 2021, Ms. Cratsley submitted to and/or requested from Defendant Guthrie an exemption from the NYS Vaccine Mandate based religious grounds because her faith at that time required that she object to trusting in and taking any Covid-19 vaccine to save her from death and serious illness and her faith required her to trust God to survive any exposure to the airborne hazardous virus that causes a Covid-19 infection which can result in serious injury and possibly death ("Religious Objection").

36. Sometime on or before September 27, 2021, Ms. Cratsley Religious Objection was approved by Defendant Guthrie and she was permitted to continue to work in her job without being vaccinated. ("Approved Exemption").

37. On or around November 19, 2021, Ms. Cratsley received from Defendant Guthrie the attached and herein incorporated letter as Exhibit 7 (Revocation Letter) stating that Defendant Guthrie would be enforcing the updated NYS Vaccine Mandate pursuant to PHL §2.61 and was revoking Ms. Cratsley's Approved Exemption. See Exhibit 5 -Updated NYS Vaccine Mandate

38. The Revocation Letter required Ms. Cratsley to take any Covid-19 vaccine by November 29, 2021or be placed on unpaid leave without pay.

39. On November 29, 2021, Ms. Cratsley remained unvaccinated based on the practice of her faith and she was placed on undetermined leave without pay (ULWOP) and banned from returning to the building where she worked her job based on Defendant Guthrie's enforcement of the updated NYS Vaccine Mandate.

40. Before her constructive discharge, Ms. Cratsley adhered to Defendant Guthrie's Covid-19 workplace safety requirements which included, wearing a surgical type mask, washing-of hands and submitting to periodic Covid-19 testing.

41. At no time after Ms. Cratsley objected to taking any of the Covid-19 Vaccines did Defendant Guthrie provide Ms. Cratsley an OSHA approved PAPR mask that is 99.97% effective at preventing employee and patient exposure to any airborne hazard, including the airborne viral hazard that causes Covid-19.

42. At no time after or before Ms. Cratsley objected to taking any Covid1-19 Vaccines did Defendant provide Ms. Cratsley with any information regarding her right under the OSH Act to remain on her job in the Gutherie Hospital unvaccinated.

**<u>OSH ACT FACTS</u>**

43. In 1970, Congress (through its Constitutional power under Article 1, Section 8 of the Commerce Clause) enacted the Occupational Safety and Health Act (OSH Act) described by in the "All About OSHA" publication by the Occupational Safety and Health Administration as a law that "makes it clear that the right to a safe workplace is a basic human right" and that employers are responsible for providing a safe and healthful workplace. See <u>Exhibit 9</u>

44. The OSH Act created the federal Occupation Safety and Health Administration (OSHA) and gave exclusive authority to OSHA's Secretary through 29 U.S.C. §655 Section 6(b)(6)(iii) to

promulgate "minimum" health and safety standards and to determine the "practices, means, methods, operations, and processes" to meet the minimum standards. See Exhibit 10 – The OSH Act

45. An occupational safety and health standard is one that "requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. §652 Section 3(8) (Emphasis added).

46. To specifically address infectious communicable diseases of any severity, including Covid-19, OSHA has approved the specific methods in the list of Respiratory Standards, that include OSHA's Personal Protective Equipment standard 29 CFR §1910.132, the Respiratory Protection standard 29 CFR §1910.134 which mandates employer provide employee respirators, like the Powered Air Purifying Respirators (PAPR); and the OSHA General Duty Clause 29 U.S.C. §654 Section 5, which mandates employers to eliminate any known hazard in the workplace through engineer and administrative methods, which includes authorized ventilation and air purification regulations that can remove airborne viruses from the atmosphere under the OSHA ventilation standards. See Exhibit 11 -Collective Respiratory Standards

47. These approved safety methods have not changed despite the number of global pandemics involving hazardous respiratory agents, including the 2009 H1N1 Global Pandemic, See Exhibit 1 and other infectious diseases for which OSHA has established directives, including SARS, MRSA, Zika, Pandemic Influenza, Measles, and Ebola. (See Exhibit 12, Page 1)

48. To effectively provide a safe workplace during the Covid-19 pandemic, employers are mandated by the OSHA regulations to only use safety "methods" that meet the OSHA Respiratory regulation.

49. Congress reserved to the OSHA Secretary the exclusive power to set "a nationwide floor of minimally necessary safeguards" that federal, state and private employers and places of public accommodation are mandated to meet for public health and safety. 29 U.S.C. § 651(b) See *Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty*., 228 Cal. Rptr. 3d 406 (Cal. 2018).

50. The OSH Act was enacted "to address the problem of uneven and inadequate state protection of employee health and safety" and to "establish a nationwide 'floor' of minimally necessary safeguards." *United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd*., 32 Cal.3d 762, 772, 654 P.2d 157 (1982)

51. The list of minimum approved safety methods for respiratory communicable diseases exclusively include the General Respiratory Standard at 29 CFR §1910.132, the Personal Protective Equipment standard at 29 CFR §1910.132, the Respiratory Protection standard at 29 CFR §1910.134 and the General duty Clause of the OSH Act 29 U.S.C. §654, and ventilation standards (collectively hereinafter "Respiratory Standards"). See Exhibit 11

52. Defendant Guthrie's healthcare facilities are covered entities under the OSH Act that must comply with the OSHA minimum safety standards.

53. Under the OSH Act General Duty Clause at 29 USC 654 Sec 5, Defendants Guthrie shall provide a workplace that is free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees.

54. Pursuant to the OSHA General Duty Clause and the Respiratory Standards, Defendant Guthrie has a duty to prevent employee exposure to airborne hazardous infectious diseases, or any other hazard, found in the atmosphere of the workplace, including but not limited to the infectious diseases of SARS Cov 2, SARS, MRSA, Zika, Pandemic Influenza, Measles, and Ebola. (See Exhibit 12, Page 1)

55. The basic safety principle of the OSHA General Duty Clause is the duty of employers to remove "hazards" from the workplace and not "people."

56. Covid-19 is a type of SARS infectious disease and an airborne hazard.

57. The primary objective of the OSHA Respiratory Standards is to implement "practices, means, **methods**, operations, or processes" that, at minimum, either: 1) remove hazardous airborne contaminations from the atmosphere of a workplace and/or 2.) prevent employee exposure to known airborne contaminates in the workplace atmosphere.

58. If a safety method used by an employer to prevent or mitigate the transmission of recognized airborne hazards in the workplace atmosphere, including Covid-19, does not meet the two objectives listed above, then the method cannot meet the OSHA minimum safety method standard.

59. According to the CDC, the virus that causes Covid-19 is an airborne hazardous virus that is transmitted in airborne sprays or droplets from person to person in all environments and is an infectious disease which will always be in the atmosphere of workplaces and public places.

60. According to the CDC, the Covid-19 airborne viral hazard can cause serious physical injury and/or death.

61. Defendant Guthrie is mandated by the OSHA regulations to use only safety "methods" that meet the OSHA Respiratory regulation standards that requires approved methods that either remove airborne hazards from the workplace atmosphere or shield employees from exposure from airborne hazards.

62. No vaccine or immunization is capable of meeting the OSHA Respiratory regulation standard for approved methods because neither vaccines nor immunization can remove airborne hazards from the workplace atmosphere and neither can they shield employees from exposure to any

airborne hazard, including the Covid-19 airborne hazard or any other airborne infectious disease.

63. According to Dr. Peter McCullough, MD, a board certified physician in internal medicine and cardiovascular disease who holds additional certifications in clinical lipidology, who also holds a master's degree in public health in the field of epidemiology, vaccines of any kind are incapable of preventing the transmission of any airborne communicable hazardous disease, like Covid-19, and the requirement for any employee to be mandated to take the Covid-19 vaccine for public and workplace safety was not necessary because no vaccine can remove any airborne hazard from a public or workplace atmosphere and no vaccine can shield any person from exposure to any airborne hazard, including the Covid-19 virus, that may be found in the atmosphere of a workplace or public place. See Exhibit 13 Affidavit of Dr. McCullough generally

64. According to the 40 years of medical knowledge and clinical virology research experience of Dr. McCullough and his knowledge and experience with compliance with the OSH Act as a practitioner, Covid-19 is an occupational illness because the airborne Covid-19 hazard can and does enter the atmosphere of workplaces and when an employee is exposed to the airborne viral hazard in the workplace, employees can and do get infected from the exposure to the Covid19 airborne virus, which causes serious injury and death. See Exhibit 13, McCullough Affidavit

65. According to Dr. McCullough, when an employer covered by the OSH Act recognizes that the Covid-19 airborne viral hazard is in their workplace, the employer has the duty under the OSH Act General Duty clause to remove the Covid-19 airborne hazard or provide equipment to employees that shield them from exposure to the Covid-19 airborne hazard in order to stop or

prevent transmission of the Covid-19 virus to eliminate serious injuries and death from the disease. Id.

66. Also, according to Dr. Baxter Montgomery, MD, a cardiologist responsible for OSHA workplace safety in his medical facility, vaccines/immunizations are "medical treatments" that affects the human immune system and are incapable of removing airborne infectious diseases from the air or shielding employees from exposure to any airborne infectious disease, like Covid-19 that can cause serious injury or death. See Exhibit 14 -. Dr. Montgomery Affidavit)

67. While all vaccines obtain federal approval for use from the Food & Drug Administration (FDA), the 1938 Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 301 et seq., only grants the FDA authority to regulate all "drugs" and "devices," which include any "articles (other than food) intended to affect the structure or any function of the body," as well as any components of such articles. Id. § 321(g)(1)(C)- (D), (h)(3) (Emphasis added).

68. The FDA does not have authority to regulate methods to be used to provide environmental health and safety in physical places of business and workplaces.

69. Neither does FDA approval of any vaccine for use – including the Covid-19 vaccines, nor does a recommendation from the Center for Disease Control (CDC) that the Covid-19 vaccine is "safe and effective," automatically make any vaccine, including the Covid-19 vaccine an OSHA approved "safety method" that employers can use to prevent employee exposure to airborne communicable infectious diseases in the workplace atmosphere, including the Covid-19 airborne viral hazard.

70. The FDA regulates medical treatments or products that are ingested inside a human person that every competent person has the fundamental right to refuse. *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990)

71. The OSH Act does not authorize the OSHA Secretary nor employers regulated by the OSH Act regulations to prescribe FDA "medical treatments" to eliminate airborne workplace hazards like Covid-19 that can cause serious injury or death.

72. It is a felony in New York for any unauthorized person to prescribe or mandate a "medical treatment," including the medical treatment of the Covid-19 vaccine. See New York Education Law §6520& §6521 and §6512.

73. Vaccines/immunizations are not OSHA authorized or approved workplace safety methods that employers are permitted to use to comply with the OSHA mandate that employers protect employees from exposure to airborne hazards.

74. Vaccines/immunizations fall below the approved OSHA Respiratory safety method standards.

75. Covered employers, including Defendant Guthrie, are mandated to comply with all OHSA minimum safety standards. 29 U.S.C. §654 Section 5(a)(2)

76. The FDA and the CDC are agencies within the U.S. Federal Department of Health and Human Services (HHS).

77. Pursuant to 29 U.S.C. §669 Sec. 20(a)(1) of the OSH Act, the Secretary of HHS in consultation with the OSHA Secretary can conduct directly or by grants or contracts, research and "experiments" relating to approaches for dealing with occupational health problems.

78. On or around December 11, 2022, HHS through its FDA agency provided Emergency Use Authorization (EUA) for Pfizer-BioNTech, Moderna, and Janssen Covid-19 vaccines (collectively the "Vaccines") as experimental medical treatments for the virus that causes the Covid-19 infection in humans, including infections of employees in workplaces or places of public accommodations.

79. The HHS/FDA EUA approval of the experimental Vaccines was part of the many "activities" authorized under the OSH Act in 29 U.S.C. §669 Sec. 20(a)(1) relating to approaches for

dealing with occupational health problems, which Covid-19 infections of employees in healthcare facilities is an occupational health problem.

80. When Congress enacted the 1972 Communicable Disease Control Program (CDCP) it only authorized the Secretary of HHS to make vaccines freely available to the general public through federal grants to states. See Exhibit 15

81. The legislative history of the CDCP reveals that neither HHS nor any other federal agency, including OSHA, has ever been authorized by Congress to mandate compulsory human vaccination of any kind nor has HHS nor any federal or state agency authorized employers to discharge employees for refusing to take any vaccine.

82. 29 U.S.C §669 Section 20(a)(5) of the OSH Act specifically prohibits the Secretary of HHS or the Secretary of OSHA or any person or employer from requiring or mandating medical examinations, vaccines/immunizations or medical treatment of employees who object to a vaccine/immunization, medical examination or treatment on religious grounds.

83. 29 USC §669 Section 20(a)(5) of the OSHA Act states that "Nothing in this or any other provision of this Act shall be deemed to authorize or require medical examination, immunization, or treatment for those who object thereto on religious grounds…."

84. 29 USC §669 Section 20(a)(5) of the OSHA Act provides a statutory ban against employer or government mandated immunizations or vaccines, medical examinations or medical treatment ("Medical Treatments") against employees who object to the Medical Treatment on "religious grounds," (the Medical Treatment Ban) which statutory provision also protects employee First Amendment Rights under the Free Exercise Clause that allows all citizens to practice their religion – like refusing a vaccine based on their faith– so long as the practice does not conflict with a "necessary" government interest.

85. 29 USC §669 Section 20 of the OSH Act is not a regulatory provision or standard created by the OSHA Secretary.

86. 29 USC §660 Section 11(c)(1) of the OSH Act bans employer discharge or discrimination (Strict Liability Ban) against employees who exercise their right to object to the Medical Treatments pursuant Section 20(a)(5) as stated below:

> "No person shall discharge or in any manner discriminate against any employee because ………..of the exercise by such employee ……..of any right afforded by this Act."

87. 29 USC §660 Section 11(c)(2) provides employees a private right of action against any person who violates the Medical Treatment Ban by discharging or discriminating against an employee who exercises their OSH Act and First Amendment right to refuse the employer mandated Medical Treatments.

88. 29 USC §669 Section 20(a)(5) of the OSHA Act does not require an employee to explain in writing their religious beliefs to anyone before their right to object to a Medical Treatment is protected from wrongful discharge or employer discrimination under Section 11(c)(1). Employees

89. 29 USC §660 Section 11(c)(2) does not require or mandate an employee who is wrongly discharged by an employer for objecting to Medical Treatment on religious grounds to file a complaint with the Secretary of OSHA before the employee is permitted to bring an action in United States District courts.

90. The OSHA Secretary does not have authority to amend, modify or repeal 29 USC §669 Section 20 of the OSH Act and neither does the OSHA Secretary have authority to investigate, report, fine or sue employers for violations of 29 USC §660 Section 11(c)(1) and based on an employee's exercise of their right to object to Medical Treatment contained in 29 USC §669 Section 20(a)(5).

91. On June 21, 2021, before the New York DOH vaccine mandate was issued, OSHA issued an Emergency Temporary Standard for healthcare entities (Healthcare ETS), which states on Page 32454 that the "removal" of employees from the workplace is only permitted when an employee is contagious with a Covid-19 infection, as stated below – See Exhibit 16

> The first two categories of employees who should be removed from the workplace are those employees who are suspected to be or are confirmed to have COVID-19 based on a COVID-19 test or diagnosis by a healthcare provider and those employees who develop certain Start Printed Page 32454COVID-19 symptoms. Removal of these two categories of employees is consistent with isolation guidance from the CDC (February 11, 2021). The third category of employees who should be removed from the workplace to further reduce disease transmission are those who are at risk of developing COVID-19 because they have had recent close contact in the workplace with someone who is COVID-19-positive while not wearing a respirator and all required PPE (CDC, March 12, 2021). The need for removal of these employees is based on quarantine guidance from CDC (December 2, 2020) and is consistent with CDC recommendations for quarantine as a means of reducing workplace transmission (CDC, February 16, 2021a).

92. Nothing in the June 2021 OSHA Healthcare ETS mandates employers to discharge or place on leave without pay an unvaccinated person, absent the existence of the above factors for "temporary removal" during an employees Covid-19 infection contagious period.

93. According to OSHA expert hygienist Bruce Miller, the OSHA standards also permits employees to work remotely as a safety method to shield employees from exposure to airborne hazards like the Covid-19 virus present in the atmosphere of the workplace. See Exhibit 17

//

//

//

//

//

**FIRST CAUSE OF ACTION**
**WRONGFUL DISCHARGE UNDER THE OSH ACT**
**( 29 U.S.C. §660 Section 11(c))**

**A. OSH Act Prohibits Violations of Statutory Rights**

94. Plaintiffs repeat, reiterate, and realleges each and every allegation in the Statement of facts and descriptions of Plaintiffs above in paragraphs 1-93 which all statements are incorporated herein by this reference.

95. On November 19, 2021, when Defendant Gutherie revoked Ms. Cratsley's right to continue to work without having to take the Covid-19 vaccine, and notified Ms. Cratsley by letter that she would be placed on indeterminate leave without pay for refusing to be Covid-19 vaccinated by November 29,2021.

96. Defendant Guthrie violated 29 U.S.C. § 660 Section 11(c)(1) which bans discharge of employees for exercising their OSHA right to object to employer mandated Medical Treatment.

97. On November 29, 2021, Ms. Cratsley was not Covid-19 vaccinated, so she was placed on indeterminate leave without pay for failing to provide proof Covid-19 vaccination and locked out of her job.

98. Defendant Guthrie never took Plaintiff Cratsley off leave without pay status and request her turn to work; so, she was terminated.

99. Defendant Guthrie violated 29 U.S.C. § 660 Section 11(c)(1) and 29 USC §669 Section 20(a)(5) of the OSH Act which subjects Defendant to liability for all appropriate relief

including rehiring, reinstatement of Ms. Cratsley to her former position with back pay, consequential damages and punitive damages.[3]

**SECOND CAUSE OF ACTION**
**Conspiracy Claim under 42 U.S.C. §1983 for violation of the OSH ACT and the First Amendment Free Exercise Clause**

100. Ms. Cratsley repeats, reiterate, and reallege each and every allegation above in Paragraphs 1-98 and incorporates all statements and exhibits herein by this reference.

101. Defendant Guthrie and Defendant Dr. Edmund Sabanegh knew or should have known that the New York State PHL §2.61 violated federal law, specifically the OSH Act Sections 20(a) and Section 11 (c) and violated the First Amendment Free Exercise Clause. See *Health and Hospital Corporation of Marion County et al. v. Talevski*

102. Defendant Guthrie and Defendant Dr. Sabanegh knew or should have known that terminating Plaintiff Cratsley was a willfull disregard for Plaintiff's OSHA and First Amendment rights and that terminating Plaintiff Cratsley when it was not necessary to remove her from Defendant hospital building, particularly because Defendants could have allow Plaintiff Cratsley to wear as Power Air Purifying Respirator equipment so that she could have continued to do her job while actually preventing the transmission of the airborne virus of Covid-19.

103. Dr. Sabanegh also knew or should have known that Plaintiff's employment was governed by the SEIU 1199 Collective Bargaining Agreement (CBA) that also must comply with the

[3] See *Reich v. Cambridgeport Air Systems, Inc*., 26 F.3d 1187, 1190 (1st Cir. 1994) (We cannot find, therefore, in the legislative history of the OSH Act any "clear direction" that the term "all appropriate relief" was intended to deny to the courts remedial powers to award compensatory and punitive damages in a cause of action analogous to an intentional tort.

federal OSH Act and precludes termination of Plaintiff Cratsley as a union worker for exercising her statutory OSH Act right to object to employer mandated Medial Treatment.

104. Dr. Sabanegh knew or should have known that Plaintiff Cratsley's employment CBA with Defendant Guthries did not contain a requirement that Plaintiff Cratsley or any other employee to take any vaccine as a term or "condition of employment."

105. Dr. Sabanegh knew or should have known that the National Labor Board has determined that CBA's cannot include "terms" that are illegal subjects that cannot be bargained over because the terms discriminate against a group of employees based on their religion See Exhibit 18 – NLRB Memo - and that Defendant Guthries agreement to place Plaintiff Cratsley on ILWOP and subsequent termination to enforce PHL §2.61 for her exercise of her right to refuse the Covid-19 vaccine and remain working based on religious grounds amounts to discrimination under the NLRB and under the OSH Act and discrimination under color of law under Section 1983 in violation of the First Amendment Free Exercise Clause.

106. Defendant Guthrie and Defendant Dr. Edmund Sabanegh, agreed, cooperated, participated, and conspired to assist in the enforcement of the State of New York's unlawful deprivation of Plaintiffs OSH Act right to object to the Covid-19 Medical Treatment and remain in her job by enforcing the requirements of New York PHL §2.61, which required Covered Entities to "continuously require" personnel to be fully vaccinated against Covid-19 and then terminating Plaintiff pursuant to the "termination" right granted in PHL §2.61.

107. The State of New York, while acting under color of state law, enacted PHL §2.61 as a hospital regulation that violated the OSH Act Medical Treatment ban that Defendant Guthrie complied with and resulted in the termination of Plaintiff for exercising her OSH

Act and First Amendment Free Exercise Clause right to object to the New York State Vaccine mandate under PHL §2.61.

108. Defendant Edmund Sabanegh, MD public press release statement that "Vaccination is the best way to slow the spread of COVID-19 and prevent serious illness, hospitalization, and death…" is evidence of Dr. Sabanegh's agreement and conspiracy with the State of New York to deprive Plaintiff Cratsley of her OSHA and First Amendment Free Exercise right to object to taking the Covid-19 vaccine on religious grounds.

109. Again, the enactment of PHL §2.61 under color of law also violates Plaintiffs First Amendment Free Exercise clause rights because according to Dr. McCullough, Dr. Montgomery and Expert Bruce Miller, vaccines, including the Covid-19 vaccine, are never medically necessary to prevent or mitigate the spread of any airborne communicable hazard in the workplace and therefore, the State of New York had no compelling interest for enforcing hospital employee Covid-10 mandatory vaccination.

110. Neither the State of New York nor Defendant Guthrie acting jointly, in agreement or conspiratorially had the right to force employee compliance with a PHL §2.61 that violated the objectives of the OSH Act bans on mandated Medical Treatment.

111. The Covid-19 vaccine could never meet the State of New York's public policy objective of slowing the rates of Covid-19 infections because the Covid-19 vaccine cannot prevent the transmission of the disease because vaccines cannot shield employees from exposure to the airborne hazard in the workplace and neither can the vaccine remove the Covid-airborne virus from the atmosphere in the workplace.

112. Because the New York State PHL §2.61 states that New York hospitals, including Defendant Guthrie, "may terminate" unvaccinated employees, Defendant Guthries termination Plaintiff by placing her in ILWOP was "willful" because the PHL termination

authority was not mandatory and Guthrie had the discretionary power to not to terminate Plaintiff; but she was terminated anyway.

113. Defendant Guthrie willfully terminated Plaintiff Cratsley despite Guthrie's authority to no do so, which subjects Defendant Guthrie to punitive damages for its willful deprivation of Plaintiffs Cratsley's right to object to the Covid-19 vaccine and remain in her job.

## REMEDIES

a. Plaintiff seeks for herself individually and for those similarly situated, immediate reinstatement to her position with any pay increases given to the position, with the same seniority and benefits.
b. Back pay with lost vacation, sick and/or personal leave pay since termination;
c. Lost retirement matching by Defendant during the period of unemployment;
d. Reinstatement of years toward retirement;
e. Compensatory damages;
f. Punitive damages in an amount to be determined by a jury; and
g. Attorney fees, costs and any other available remedy.

Dated: November 29, 2024

Respectfully submitted,

/s/ Tricia S. Linday

Tricia S. Lindsay, Esq.
531 E. Lincoln Ave., Suite 5B
Mount Vernon, New York 10552
ph: 860-783-8877
fax: 914-840-1196
email: TriciaLindsayLaw@gmail.com